UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOHN HALE,

                                    Plaintiff,

                                                                    9:08-CV-0612
v.                                                                  (DNH/GHL)

JADOW RAO, *et al.*,

                                    Defendants.

_____

APPEARANCES:                                      OF COUNSEL:


JOHN HALE, 03-A-2533
   Plaintiff, *pro se*
Wende Correctional Facility


HON. ANDREW M. CUOMO                         RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
Albany, New York 12224


GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

        This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred

to me for Report and Recommendation by the Honorable David N. Hurd, United States District

Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this

Court.

        Currently pending is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure

12(b)(6) and 12(c), seeking dismissal of the complaint in its entirety against Defendant Dr. Jadow

Rao and against Defendants J. Ireland, R. Furnia, Mack Reyell, J. Silver, and Rao in their official

capacities.  Dkt. No. 27.  Plaintiff opposes the motion.  Dkt. Nos. 39, 41.

        Also pending is a Motion to Dismiss for Lack of Prosecution pursuant to Fed. R. Civ. P.

41(b) or, in the alternative, for an Order compelling Plaintiff to respond to paragraphs I(A)(1)(b) and

(c) of the Court's Mandatory Pretrial Discovery and Scheduling Order.  Dkt. No. 36.  Plaintiff

opposes the motion.  Dkt. Nos. 39, 41.

For the reasons discussed below, I recommend that the Motion to Dismiss pursuant to Fed.

R. Civ. P. 12(b)(6) and 12(c) be granted, in part, and denied, in part.  I also recommend that the

Motion to Dismiss for Lack of Prosecution pursuant to Fed. R. Civ. P. 41(b) or, in the alternative,

for an Order compelling Plaintiff's responses be denied.

## I.     MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(c)

### A.     BACKGROUND

Plaintiff John Hale alleges that eleven employees ("Defendants") of the New York State

Department of Correctional Services ("DOCS") violated his rights under the Eighth Amendment

when (1) in or around May of 2006, Defendants Ireland, Revell, Furnia, and Silver physically

assaulted and injured him without provocation at Clinton Correctional Facility ("C.F."), and (2)

between May of 2006 and February of 2008, the remaining seven Defendants (Dr. Rao, John Does

1-2, and Jane Does 1-4) were deliberately indifferent to his resulting serious medical needs at

Clinton, Southport, Elmira and Attica C.F.s.  Complaint at ¶¶ 16-27.

Plaintiff states that he has exhausted his administrative remedies.  Complaint at ¶ 29.

Plaintiff has submitted copies of decisions from the Central Office Review Committee of the Inmate

Grievance Program.  Dkt. No. 5, Exhibits.  Plaintiff also included a copy of a decision from the

Superintendent of Attica C.F.  *Id.*

### B.     LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

It has long been understood that a defendant may base such a motion on either or both of two

grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure

8(a)(2);[1] or (2) a challenge to the legal cognizability of the claim.[2]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim

*showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). By

requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement

that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it

_____

[1] *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[2] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12(b)(6)'s requirement of stating a cognizable claim and Rule 8(a)'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") (citation omitted); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004).

rests."[3]  The main purpose of this rule is to "facilitate a proper decision on the merits."[4]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[5]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)).  Accordingly, "where the well-pleaded facts do not permit the court to

---

[3]  *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (citation omitted; emphasis added); *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (citation omitted).

[4]  *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") (citation omitted); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") (citations omitted).

[5]  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 (2d Cir. 1996)).

infer more than the mere possibility of misconduct, the complaint has alleged - but has not *shown* - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[6]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[7]  In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[8]  Moreover, "courts must

---

[6]  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[7]  *Hernandez*, 18 F.3d at 136 (citation omitted); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

[8]  "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering plaintiff's response affidavit on motion to dismiss)).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint

construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they

suggest."[9]  Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives

any indication that a valid claim might be stated."[10]  Of course, an opportunity to amend is not

required where the plaintiff has already amended his complaint.[11]  In addition, an opportunity to

amend is not required where "the problem with [plaintiff's] causes of action is  substantive" such

that "[b]etter pleading will not cure it."[12]

      However, while this special leniency may somewhat loosen the procedural rules governing

the form of pleadings (as the Second Circuit has observed),[13] it does not completely relieve a *pro se*

---

once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

  [9]  *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

  [10]  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

  [11]  *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

  [12]  *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

  [13]  *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") (internal quotation marks and citation omitted); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)

plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[14]  Rather, as

both the Supreme Court and Second Circuit have repeatedly recognized, the  requirements set forth

in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[15]

Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not

absolutely suspended."[16]

Defendants also move pursuant to Fed. R. Civ. P. 12(c).  Rule 12(c) of the Federal Rules of

Civil Procedure provides, in pertinent part: "After the pleadings are closed . . . any party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "In deciding a Rule 12(c) motion, [courts]

---

("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") (citation omitted).

[14]  *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) (unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit); *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[15]  *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[16]  *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

7

apply the same standard as that applicable to a motion under Rule 12(b)(6)."[17]

### C.    ANALYSIS

#### 1.    Eighth Amendment

Reading the complaint generously, Plaintiff alleges that he complained to Defendant Rao, Health Services Director at Attica C.F., about his "medical problems," which included (1) the injuries he sustained during the alleged May 2006 incident, such as persistent vomiting of blood and urinating of blood, (2) surgical staples in his stomach, and (3) swollen ribs.[18]  Complaint at ¶¶ 16-27.  Plaintiff alleges that in response, Dr. Rao stated that he did not believe Plaintiff's complaints, consistently "denied" Plaintiff's complaints, and called Plaintiff " 'crazy.' " *Id.* at ¶¶ 26, 27. Plaintiff claims that as a result, he has endured pain, suffering, and injuries.  *Id.*

Defendants argue that Plaintiff has made an insufficient showing of an Eighth Amendment claim against Defendant Rao.  Dkt. No. 27-2 at pp. 3-6.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*,

---

[17]  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted); *accord*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

[18]  Specifically, Plaintiff states, "It should be noted that *Plaintiff has been complaining about all of the above medical problems* [which include the injuries sustained during the alleged assault, the surgical staples, and swollen ribs] to medical staff here at Attica C.F. *including Defendant Dr. Rao . . . and ever since he was beaten by the Defendant Officers Ireland, Reyell, Furnia, and Silver he has been throwing up blood and urinating blood yet the Defendants consisting* [sic] *denied his complaints*; resulting in Plaintiff's pain and suffering, and further injuries."  Complaint at ¶ 27 (emphasis added).

429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Thus, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire.  Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester County Dept. of Corrections*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Salahuddin*, 467 F.3d at 280.  The focus of the second inquiry depends on whether the prisoner claims to have been completely

deprived of treatment or whether he claims to have received treatment that was inadequate. *Id*. If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id*. A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

        If the claim is that treatment was provided but was inadequate, the second inquiry is narrower. *Salahuddin*, 467 F.3d at 280. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

        To satisfy the subjective component of an Eighth Amendment claim, the defendant's behavior must be "wanton." Where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference." *Estelle*, 429 U.S. at 105.

        Medical mistreatment rises to the level of deliberate indifference only when it "involves

10

culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997).  An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.*  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").  However, malpractice that amounts to culpable recklessness constitutes deliberate indifference.  Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F.3d at 703.

Regarding the objective component, the complaint alleges that Defendant Rao provided Plaintiff with inadequate or no medical care after learning of Plaintiff's physical complaints, including persistent vomiting of blood and urinating of blood.  Vomiting of blood and urinating of blood are indications of serious medical needs. *See Morgan v. Maass*, No. 94-35834, 1995 WL

11

759203, at *2 (9th Cir. Dec. 26, 1995) (finding that vomiting blood constituted a serious medical

need); *Kimbrough v. City of Cocoa*, No. 6:05-cv-471, 2006 WL 2860926, at *3 (M.D. Fla. Oct. 4,

2006) (finding that "[e]ven to a lay person, it is obvious that blood in the urine is an indication of a

serious medical need."). Thus, the allegations in the complaint satisfy the objective component.

Regarding the subjective component, the complaint alleges that Defendant Rao was aware

that Plaintiff had serious medical needs, but consciously and intentionally disregarded or ignored

those needs. Dkt. No. 1. Thus, the allegations in the complaint satisfy the subjective component.

Defendants argue that Plaintiff's complaint is conclusory and fails to contain specific

allegations of fact indicating a deprivation of rights as against Defendant Rao. Dkt. No. 27-2, at p.

5. The Court disagrees. Plaintiff specifically stated that he informed Defendant Rao about his

"medical problems," which included vomiting of blood and urinating of blood, but that Dr. Rao

expressed disbelief, consistently "denied" Plaintiff's complaints, and stated that Plaintiff was

"crazy." Complaint at ¶ 27. Plaintiff has set forth more than a simple conclusory allegation.

In light of the foregoing, the Court declines to conclude at this stage that Plaintiff has failed

to state a claim for deliberate medical indifference against Defendant Rao.[19] Accordingly, the

---

[19] *See Beeks v. Reilly*, No. 07-CV-3865, 2008 WL 3930657, at *7 (E.D.N.Y. Aug. 21, 2008) (citing *Chance*, 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.... It may be that Chance has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment. But even if we think it highly unlikely that Chance will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ....") (citations and quotation marks omitted) (other citations omitted); *see also Lloyd v. Lee*, 570 F. Supp. 2d 556, 559 (S.D.N.Y. 2008) (finding that amended complaint plausibly alleged that doctors knew that plaintiff was experiencing extreme pain and loss of mobility, knew that the course of prescribed course of treatment was ineffective, and declined to do anything to attempt to improve plaintiff's situation besides re-submitting MRI request forms) (citing *Harris v. Westchester*

motion to dismiss the Eighth Amendment claim against Defendant Rao should be denied.

### 2.   Qualified Immunity

Defendant Rao asserts that he is entitled to dismissal on the ground of qualified immunity. Dkt. No. 27-2 at pp. 6-8.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a result, a qualified immunity inquiry in a prisoner civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity';
> (2) whether the decisional law of the Supreme Court and the applicable
> circuit court support the existence of the right in question; and (3)
> whether under preexisting law a reasonable defendant official would have
> understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962

---

*County Dep't of Corrections*, No. 06 Civ. 2011, 2008 WL 953616, at *23 (S.D.N.Y. Apr. 3, 2008) (despite plaintiff's sparse allegations as to defendant's conduct, at the 12(b)(6) stage plaintiff sufficiently alleged facts supporting a plausible claim that defendant was deliberately indifferent to plaintiff's medical needs)).

(1992).[20]  "As the third part of the test provides, even where the law is 'clearly established' and the

scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also

protects an official if it was 'objectively reasonable' for him at the time of the challenged action to

believe his acts were lawful."  *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations

omitted).[21]  This "objective reasonableness" part of the test is met if "officers of reasonable

competence could disagree on [the legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S.

335, 341 (1986).[22]  As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly
> incompetent or those who knowingly violate the law.
>
> . . . Defendants will not be immune if, on an objective basis, it is obvious that no reasonably
> competent officer would have concluded that a warrant should issue; but if officers of
> reasonable competence could disagree on this issue, immunity should be recognized.

---

[20]  *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d
57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller
of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d
Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State
Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[21]  *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") (citation omitted); *Davis v.
Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established]
constitutional rights enjoy a qualified immunity that protects them from liability for damages unless
it is further demonstrated that their conduct was unreasonable under the applicable standard."); 
*Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even
where the rights were clearly established, if it was objectively reasonable for defendants to believe
that their acts did not violate those rights").

[22]  *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995)
(citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

*Malley*, 475 U.S. at 341.[23]

Here, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in Plaintiff's favor, the Court declines to conclude that Defendant Rao is entitled to qualified immunity at this stage.  As noted, Plaintiff alleges that he informed Dr. Rao of his "medical problems," including persistent vomiting of blood and urinating of blood, but Dr. Rao stated that he did not believe Plaintiff's complaints, consistently denied Plaintiff's complaints, and called Plaintiff " 'crazy,' " which resulted in pain, suffering, and injuries.  Complaint at ¶¶ 26-27. Therefore, the motion to dismiss the complaint on the ground of qualified immunity should be denied.[24]

### 3.     Eleventh Amendment

Defendants Ireland, Furnia, Reyell, Silver, and Rao argue that to the extent the complaint seeks damages against them in their official capacities, the claim is barred by the Eleventh Amendment.  Dkt. No. 27-2 at pp. 8-9.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

_____

[23]  *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

[24]  *See Beeks*, 2008 WL 3930657, at *9 (citing *See McKenna*, 386 F.3d at 437-38 (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial....") (other citations omitted)).

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Eleventh Amendment bars suits against state officials acting in their official capacities.[25] Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket."  *McGinty v. State of New York*, 251 F.3d 84, 100 (2d

---

[25]  *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

Cir. 2001) (citation omitted); *see also* Fed.R.Civ.P. 12(h)(3).

Here, each of the represented Defendants has an official position with DOCS.  Therefore, any claims for money damages against these Defendants in their officials capacities are barred by the Eleventh Amendment and should be dismissed.

## II.   MOTION TO DISMISS FOR LACK OF PROSECUTION, OR IN THE ALTERNATIVE, FOR AN ORDER COMPELLING RESPONSES

Defendants argue that the complaint should be dismissed on the ground that Plaintiff has failed to prosecute this action.  Dkt. No. 36.  Defendants argue that in the alternative, Plaintiff should be compelled to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order.  *Id.*

### A.   ANALYSIS

Rule 41 of the Federal Rules of Civil Procedure provides, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  As a result, Fed. R. Civ. P. 41(b) may be fairly characterized as providing for two independent grounds for dismissal on motion or on the Court's own initiative: (1) a failure to prosecute the action, and (2) a failure to comply with the procedural rules, or any Order, of the Court.  *Id.*

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[26]  The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute under Rule 41(b):

---

[26]  *See Merker v. Rice*, 649 F.2d 171, 173 (2d Cir. 1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[27]

As a general rule, no single one of these five factors is dispositive.[28]  However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution."  N.D.N.Y. L.R. 41.2(a).  In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[29]

### 1.    Address Changes

As to the first factor (the duration of Plaintiff's "failures") Defendants argue that Plaintiff was transferred to several different facilities, but failed to update the Court and defense counsel of his changes of address.  Dkt. No. 36-2, Lombardo Decl., at ¶¶ 4-5, 7-12 & Dkt. Nos. 49, 50. Defendants argue that the action should be dismissed for this reason alone.  Dkt. No. 36-8.

Plaintiff has failed at times to update the Court and defense counsel as to his address

---

[27] *See Shannon v. GE Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (affirming Rule 41(b) dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) (citation and internal quotation marks omitted).

[28] *See Nita v. Conn. Dep't of Env. Protection*, 16 F.3d 482 (2d Cir. 1994).

[29] *See, e.g.*, *Robinson v. Middaugh*, 95-CV-0836, 1997 WL 567961, at *1 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed. R. Civ. P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

18

changes.  His most recent failure occurred on July 6, 2009 when he was transferred from Green

Haven C.F. to Auburn C.F., and subsequently to Wende C.F., where he now remains.  Dkt. No. 50-

2, Stachowski Decl., at ¶¶ 3-5.  Plaintiff failed to update the Court and defense counsel as to these

changes.  Thus, Plaintiff's failure to provide an updated address has persisted since July 6, 2009

(less than three months).  Generally, it appears that durations of this length (i.e., less than four

months) are not long enough to warrant dismissal.[30]

The Court notes that Plaintiff has been subject to frequent transfers.  Since August 7, 2008,

Plaintiff was transferred on seven occasions.  Dkt. No. 36-3, Loiodice Decl., at ¶¶ 4-11; Dkt. No.

50-2, Stachowski Decl. at ¶¶ 4-5.  Three of the transfers occurred within a span of six days.  Dkt.

No. 36-3, Loiodice Decl., at ¶¶ 7-11.

Moreover, whether Plaintiff was mentally and physically capable of providing written

updates of all of his address changes is unclear.  Plaintiff noted in his opposition papers that he was

diagnosed as suffering from schizophrenia; has "borderline intellectual" functioning;[31] and is unable

to read or write; therefore Plaintiff's submissions to the Court are written by others.  Dkt. No. 39.

Plaintiff also stated that at times he has been "prohibited from possessing any type of writing

utensil."  Dkt. No. 41.  Plaintiff further stated that while at Central New York Psychiatric Center,

"any legal work whatsoever" was discouraged and "not facilitate[d]."  *Id.*  In light of the foregoing, I

---

[30]  N.D.N.Y. L.R. 41.2(a) ("[P]laintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution."); *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (plaintiff had failed to comply with order directing him to answer interrogatories for more than four months).

[31]  Plaintiff submitted copies of medical records indicating that he was diagnosed as suffering from, *inter alia*, schizophrenia, paranoid type; has borderline intellectual functioning; and has an IQ of 71.  Dkt. No. 5.

19

find that the first factor weighs against dismissal of Plaintiff's complaint.

As to the second factor (whether plaintiff had received notice that further delays would result in dismissal), I find that Plaintiff has received notice that his failure to provide his current address may result in dismissal.  *See* Dkt. No. 12 at 4 (**Order stating that "Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so will result in the dismissal of this action**") (emphasis in original); N.D.N.Y. L.R. 41.2(b) (stating, "Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action".)[32]  As a result, I find that the second factor weighs in favor of dismissal of Plaintiff's complaint.

Regarding the third factor (whether defendants are likely to be prejudiced by further delay), I am unable to find, based on the current record, that Defendants are likely to be prejudiced by a delay in the proceedings.  While any delay that occurs theoretically impairs the Defendants' memories, the preservation of evidence, and the ability to locate witnesses,[33]  Defendants have not argued that any delay has occurred due to Plaintiff's failure to update his address.  As a result, I find that the third factor weighs against dismissal of Plaintiff's complaint.[34]

---

[32]  I note that, to assist *pro se* litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's Local Rules of Practice and *Pro Se* Manual.

[33]  *See*, *e.g.*, *Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade.  Given the age of this case, that problem probably is severe already.  The additional delay that plaintiff has caused here can only make matters worse.").

[34]  *See Cruz v. Jackson*, No. 94 Civ. 2600, 1997 WL 45348, at * 2 (S.D.N.Y. Feb. 5, 1997) (declining to dismiss action for failure to prosecute or failure to comply with court orders where plaintiff had failed to meet discovery deadlines, and noting that the fact that plaintiff "has been in lock-down and transferred to another facility during the pendency of this action also counsels

Regarding the fourth factor (striking the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard), I find that Plaintiff's right to receive a further chance to be heard in this matter, at this point, outweighs the need to alleviate congestion on the Court's docket.  Moreover, Defendants point to no delay caused by Plaintiff's failure to update his address.  As a result, I find that the fourth factor weighs against dismissal of Plaintiff's complaint.

With regard to the fifth factor (whether the judge has adequately assessed the efficacy of lesser sanctions), I find that a strong reminder to Plaintiff of his obligation to provide a current address might be effective and is warranted.  Plaintiff, who alleges that he suffers from schizophrenia and is unable to read and write, Dkt. No. 39, has been responsive to prior Orders from the Court,[35] and has shown an interest in prosecuting this action.  *See* Dkt. Nos. 39, 41 (Plaintiff's Opposition Papers).  As a result, I find that the fifth factor weighs against dismissal of Plaintiff's complaint.

Weighing these five factors together, I conclude that they tip the scales against dismissing Plaintiff's complaint (one of the factors weighing in favor of such dismissal and four of the factors weighing against such dismissal).[36]  Dismissal based on a lack of prosecution is a harsh remedy to

---

leniency toward [the plaintiff's] delays") (citing *Jones v. Smith*, 99 F.R.D. 4, 14-15 (M.D.Pa.1983) (granting *pro se* plaintiff final opportunity to comply with orders of court, despite repeated wilful, dilatory and contumacious tactics), *aff'd* 734 F.2d 6 (3d Cir. 1984)).

[35]  *See* Dkt. Nos. 7-11 (Report-Recommendation and Order; Plaintiff's Inmate Authorization Forms; Application to Proceed *In Forma Pauperis*; and Signed Last Page of Complaint).

[36]  *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993); *see also Jacobs v. County of Westchester*, Dkt. No. 02-0272, 2005 WL 2172254, at * 3 (2d Cir. Sept. 7, 2005) (remanding case to district court to make further factual findings concerning the plaintiff's lack of responsiveness and concerning his confinement in a prison psychiatric ward where district court dismissed for

be used only in extreme situations.  The Court does not currently view the present case to be in such a situation.  For these reasons, I recommend that Defendants' Motion to Dismiss based on Plaintiff's failure to provide a current address (Dkt. No. 36) be denied.

### 2.      Responses to Scheduling Order

Defendants argue that if the Court does not dismiss the complaint for a failure to prosecute, the Court should issue an order requiring Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's mandatory pretrial discovery and scheduling order dated November 18, 2008 ("Scheduling Order").  Dkt. No. 36-8, Memo. of Law at pp. 3-4.

The Scheduling Order provided, in relevant part, as follows:

### I. Discovery

**A. <u>Documents</u>.** Within sixty (60) days of the date of this order:

**1. <u>Plaintiff(s)</u>** shall provide to counsel for defendant(s) copies of all:

**a.** Documents and other materials which plaintiff(s) may use to support the claims in the complaint;

**b.** Correspondence, grievances, grievance appeals, and other documents relating to requests for administrative remedies or the inability or failure to exhaust such remedies; and

**c.** Complaints and petitions filed by plaintiff(s) in any other cases in any court relating to the same issues raised in the complaint in this action or, if such documents are not within the possession of plaintiff(s), plaintiff(s) shall provide to counsel for defendant(s) a list of any such legal proceedings stating the court in which the proceeding was filed, the caption of the case, and the court number.

Dkt. No. 26, at pp. 1-2.

Defendants admit that they received "what purported to be plaintiff's response to paragraph

_____

failure to prosecute).

I(A)(1) of the [Scheduling Order]" in a letter to defense counsel from Plaintiff.  Dkt. No. 36-2,

Lombardo Decl., at ¶ 19 & Dkt. No. 36-6, Ex. C.  In that letter, Plaintiff asserted the following:

> Pursuant to paragraph I(A) of the court's mandatory pretrial discovery and
> scheduling order dated Nov. 18, [20]08[:]
>
> a.  Documents and materials which plaintiff will use to support the claims in this
> complaint is [sic] the complete Medical Records for the period of June 14, 2006 to
> present, and current Tier III documents and pictures surrounding the incident which
> you forwarded to me pursuant to mandatory pretrial discovery, in addition enclosed
> please find Lab work report of specimen done on plaintiff which will also be use[d].
>
> Plaintiff has complied with the court's mandatory pretrial discovery and scheduling
> order pursuant to paragraph I(A) so your office no longer has to seek dismissal of the
> complaint for failure to prosecute.

Dkt. No. 36-6, Ex. C.

Defendants view this letter as being nonresponsive to paragraphs I(A)(1)(b) and (c).

However, regarding paragraph I(A)(1)(b), Plaintiff specifically stated in the above-quoted letter that

he "will use the complete medical records for the period of June 14, 2006 to present, and *current*

*Tier III documents and pictures surrounding the incident which you forwarded to me*."  Dkt. No.

36-6, Ex. C at p. 1 (emphasis added).  Moreover, Plaintiff stated in his March 23, 2009 letter to

defense counsel that he filed grievances while in Attica C.F., but that he was no longer "in

possession of those grievances" because his property was lost while he was at Central New York

Psychiatric Center.[37]  Dkt. No. 39 at p. 2.  Plaintiff also stated that he has "no money in his

account," therefore he has been unable to obtain copies of his grievances, as well as medical

records.  *Id.*  Accordingly, Plaintiff has responded to paragraph I(A)(1)(b).  He stated that he no

longer possesses the grievances he filed at Attica C.F.; he is unable to afford copies; and he intends

---

[37]  Plaintiff also asserts that he no longer has a copy of the complaint in this action.  Dkt. No.
41, at ¶ 8.  Accordingly, the Clerk will be directed to provide a copy of the complaint to Plaintiff.

to use the documents that defense counsel sent to him.  To the extent that defense counsel is arguing

that Plaintiff must provide copies of the same documents defense counsel has already provided

Plaintiff, Dkt. No. 36-7, Ex. D at p. 2, this argument is unavailing.

Regarding paragraph I(A)(1)(c), Plaintiff stated in his March 23, 2009 opposition letter that

"[t]here is no other complaints or petitions filed by plaintiff in any other cases in any other court

[sic]."  Dkt. No. 39, at p. 2.  Plaintiff reiterated this response in a supplemental opposition letter

dated March 31, 2009 by stating that "there are no other known complaints, petitions, etc. filed by

plaintiff in any other court with regards to the claims raised in [this case]."  Dkt. No. 41,[38] at ¶ 6.

Accordingly, Plaintiff has responded to paragraph I(A)(1)(c).

In light of the foregoing, Defendants' request for an order compelling responses to

paragraphs I(A)(1)(b) and (c) of the Scheduling Order should be denied as moot.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motions to dismiss pursuant to Fed. R. Civ. P.

12(b)(6) and 12(c) (Dkt. No. 27) be GRANTED in part and DENIED in part.  The motion to dismiss

should be granted to the extent that Plaintiff asserts claims for money damages against Defendants

in their official capacities.  The motion should be denied to the extent that Defendants moved to

dismiss Plaintiff's Eighth Amendment claim against Defendant Rao, and moved to dismiss the

complaint against Defendant Rao on the ground of qualified immunity; and it is further

**RECOMMENDED** that the Motion to Dismiss for Failure to Prosecute or in the alternative

for an Order compelling Plaintiff's responses (Dkt. No. 36) be DENIED; and it is further

---

[38]  To the extent that Plaintiff is seeking permission to amend his complaint via his
supplemental opposition letter, (Dkt. No. 41), Plaintiff's request must be in the form of a motion.
*See* N.D.N.Y. Local Rule 7.1.

**ORDERED**, <u>**that Plaintiff is required to promptly notify the Clerk's Office and all**</u> <u>**parties or their counsel of any change in Plaintiff's address; his failure to do so may result in**</u> <u>**the dismissal of this action**</u>;

**ORDERED**, that the Clerk update Plaintiff's address to reflect that he is currently incarcerated at Wende Correctional Facility;[39] and it is further

**ORDERED**, that the Clerk serve (1) copies of the electronically-available-only opinions cited herein;[40] (2) a copy of the Complaint (Dkt. No. 1); and (3) a copy of this Report-Recommendation and Order on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

---

[39] Defendants' letter to the Court dated August 21, 2009 indicates that Plaintiff is now incarcerated at Wende C.F. Dkt. No. 50.

[40] Those decisions include *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997); *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119 (E.D.N.Y. Oct. 24, 2002); *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864 (2d Cir. Aug. 12, 2008); *Morgan v. Maass*, No. 94-35834, 1995 WL 759203 (9th Cir. Dec. 26, 1995); *Kimbrough v. City of Cocoa*, No. 6:05-cv-471, 2006 WL 2860926 (M.D. Fla. Oct. 4, 2006); *Beeks v. Reilly*, No. 07-CV-3865, 2008 WL 3930657 (E.D.N.Y. Aug. 21, 2008); *Harris v. Westchester County Dep't of Corrections*, No. 06 Civ. 2011, 2008 WL 953616 (S.D.N.Y. Apr. 3, 2008); *Robinson v. Middaugh*, 95-CV-0836, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997); *Cruz v. Jackson*, No. 94 Civ. 2600, 1997 WL 45348 (S.D.N.Y. Feb. 5, 1997); and *Jacobs v. County of Westchester*, Dkt. No. 02-0272, 2005 WL 2172254 (2d Cir. Sept. 7, 2005).

Dated: September 29, 2009
        Syracuse, New York

                                          George H. Lowe
                                          United States Magistrate Judge